Scofield, J.,
delivered the opinion of the court:
The claimant enlisted in the Army in 1851 and was retired, after a service of thirty years, from the rank of first sergeant on September 25, 1885, under the Act February 14, 1885 (23 Stat. L., 305). This act provides that—
“ When an enlisted man has served as such thirty years or upward in the United States Army or Marine Corps, either as,a private or as a non-commissioned officer, or both, he shall, by making application to the President, be placed on the retired list hereby created, with the rank held by him at the date of retirement; and he shall thereafter receive seventy-five per centum of the pay and allowances of the rank upon which he was retired.”
When a private soldier enlists in the Army, the Government, in addition to paying wages, undertakes to provide him with clothing, food, transportation, shelter, fuel, stoves, hospitals, nurses, physicians, medicines, religious instruction, and secular education.
Which of these “provisions, allowances, and benefits,” as they are-called in section 1155 of the Kevised Statutes, is embraced in the word allowances, within the meaning of the act, is the question for decision. By the construction put upon it by the Secretary of War, the retired soldier is entitled to the prescribed percentage on the commutations for clothing and furlough rations (25 cents a day). At these rates he has already been paid, lie is also “ permitted to apply to medical officers on duty for medical attendance, and to obtain necessary medicines, dressings, etc., from army dispensaries on prescriptions of medical officers of the Army, with the understanding that a medical officer is not required to leave his post or station to render such service.”
In addition to these allowances, the claimant thinks he is entitled to the percentage on commutation for medicines, medical attendance, quarters, fuel, and on service or duty rations (30 cents a day). He does not ask these things to be furnished in kind. That, he concedes, is impracticable. He claims a. money equivalent.
In the opinion of the court, Congress intended to confer upon the retired soldier the prescribed percentage of such allowances *315 -only as bad been legally furnished him while in active service for his personal and exclusive use, and which, by law or valid regulation, had acquired a commutative money value or is susceptible of accurate calculation ; it does not include allowances made to his company as a collective body.
While in camp or at a military post the soldier has many advantages which he necessarily enjoys in common with his regiment, company, or mess.
Chaplains are employed to conduct public worship and look after the spiritual welfare of the Army.
Schools are provided by section 1231'of the Revised Statutes for the instruction of enlisted men “in the common English branches and the history of the United States.”
Surgeons, medicines, hospitals, and nurses are provided for the care and relief of all the troops in common.
In such 2>rivileges and allowances no one soldier lias any personal and exclusive right, neither has any equivalent in money been authorized by statute or regulation as commutation.
It is true that the claimant has procured from the Surgeon-General an estimate of the whole cost of the medical branch of the service, and, dividing it by the whole number of beneficiaries, has obtained the supposed average expenditure for each soldier.
A similar calculation could be made for the expense of maintaining religions services and schools with equal propriety. Such advantages are in no sense personal allowances, and calculations for commutation are altogether speculative.
The claim for quarters and fuel encounters similar, if not equal, difficulties.
Sleeping apartments, reading-rooms, mess-rooms, kitchen, heating, and cooking stoves, cooking utensils, etc., are provided — not for the exclusive use of the individual soldier, but to be enjoyed in common with the regiment, company, or mess to which he belongs. It is true a small amount of fuel is furnished to the company per capita, but not for exclusive individual use. It amounts to a little more than a cord and a half for the whole year, varying somewhat with the latitude, season of' the year, and average monthly temperature. It must be burned in common, for it takes many such allowances to keep one fire going. No commutation for fuel not consumed is paid to the soldier or his company. On the contrary, para *316 graph 1861 of the regulations declares that “fuel issued to troops is public property for their use'; what they do not actually consume shall be returned to the quartermaster.”
Under sections 1293, 3296, and 1302 of the Eevised Statutes an accurate valuation has been au thoritati vely 'placed upon the allowances for clothing and rations, and whatever is not drawn in kind is paid in other articles or money. Not so with medicines, quarters, and fuel. These are not commuted to enlisted men. They are furnished to the soldier or company in kind, according to his necessities and the jiossible supply. No individual account is kept with him, and no money is paid to him or his company for under-consumption.
The claimant, in support of his construction, refers to General Order No. 104, dated September 3, 3884. By this order a monthly allowance for fuel and quarters is made to enlisted men who are detailed to act as clerks and messengers. This allowance is made, not as fixing a money value upon quarters and fuel in general, but to re imburse expenses necessarily incurred by the detail.
The validity of the order is very doubtful. It appears to-have been au indirect mode of obtaining clerk and messenger service not authorized by law. The order was virtually ann ulled by the Act of June 30, 1886 (24 Stat., 93), which made a special appropriation for a limited number of u enlisted men as general-service clerks and messengers,” and provided that it should “ be in full of all pay, commutation, and allowances.” At all events, the order had no relation to the present controversy.
Fortunately for the retired soldier, if the act of'1885, as understood and interpreted by the Secretary oi; War and the court, is less beneficial to him than its framers intended it to be, Congress can easily declare the exact amount which they then intended or now desire to pay him.
About the allowance for rations, the parties disagree only as to the amount. The commutation of a ration to a soldier on duty is 30 cents a day; off duty, on furlough, it is reduced to 25 cents a day. Upon which allowance shall the retiring percentage be calculated 1 The defendant calculates it upon the off-duty ration, because the condition of the soldier, off duty, on a furlough, and his condition, off duty, in retirement, is very much the same. That undoubtedly is true. In each case he renders no service to the Government. Why, then, would Con *317 gress intend to make the ration one-fourth less in the one case than in the ocher % The facts stated do not sustain the conclusion. A good reason for reduction appears when the ease and comfort of retirement are compared with the hardships of service ; but no such reason appears by a comparison between retirement and furlough when the conditions are admitted to be the same.
In the opinion of the court the-claimant is entitled to 75 per cent, of the duty ration from the time of his retirement, September 25,1885, to the filing of his petition, September 28,1886, making 368 days, at 3§ cents a day.
Judgment will be entered for $13.80, which is the difference between what has already been paid and the additional percentage allowed by the court.